UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DELORES L. HENDERSON,

                            Plaintiff,

            v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                            Defendant.
_____

DECISION AND ORDER

16-CV-794L

## PRELIMINARY STATEMENT

Plaintiff Delores L. Henderson ("Henderson") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. # 1).

On February 12, 2013, Henderson protectively filed an application for a period of disability and DIB, and protectively filed an application for SSI on February 14, 2013, alleging disability beginning on January 1, 2011. (Tr. 139-148).[1] On June 3, 2013, the Social Security Administration denied Henderson's applications, finding that she was not disabled. (Tr. 85-92). Henderson requested and was granted a hearing before an administrative law judge. (Tr. 93-104). Administrative Law Judge Bruce R. Mazzarella (the "ALJ") conducted the hearing on April 1,

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 7) utilize the internal Bates-stamped pagination assigned by the parties.

2015, at which Henderson and vocational expert Jay Steinbrenner (the "VE") appeared and testified. (Tr. 26-66). In a decision dated June 15, 2015, the ALJ found that Henderson was not disabled and was not entitled to benefits. (Tr. 13-25). On September 21, 2016, the Appeals Council denied Henderson's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Henderson then commenced this action on October 4, 2016, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 8; 11). For the reasons set forth below, Henderson's motion (Dkt. # 8) is denied, and the Commissioner's cross motion (Dkt. # 11), is granted. Henderson's Complaint (Dkt. # 1), therefore, is dismissed with prejudice.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In determining whether the ALJ's decision rests on substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). Still, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled[.]" *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

II. <u>The ALJ's Decision</u>

In this case, the ALJ applied the sequential analysis. At step one, the ALJ found that Henderson had not engaged in substantial gainful activity since January 1, 2011—the alleged onset date. (Tr. 15). At step two, the ALJ found that Henderson had the following severe impairments: back pain status post fusion surgery, chronic knee pain, and obesity. (*Id.*). At step three, the ALJ

found that such impairments, alone or in combination, did not meet or medical equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations. (Tr. 17).

Next, the ALJ determined that Henderson retained the RFC to perform light work, except that she was able to sit for an eight-hour workday and stand/walk for an eight-hour workday with normal breaks and meal periods. (Tr. 17). She was also able to lift/carry up to twenty pounds occasionally and up to ten pounds frequently, and occasionally stoop, kneel, crouch, and climb stairs. (*Id.*). The ALJ found at step four that Henderson was capable of performing her past relevant work as an automotive assembler (DOT # 806.684-010), housekeeper (DOT # 323.687-014), and sub-assembler (DOT # 706.687-010), and this past relevant work did not require performance of work-related activities precluded by Henderson's RFC. (Tr. 20-21). Because the ALJ found Henderson to be not disabled at step four of the sequential analysis, and thus, not disabled under the Act, he did not proceed to step five. (*Id.* at 21).

I believe the evidence supports the ALJ's findings concerning the nature and extent of Henderson's limitations, and that his finding that the Henderson was not disabled was supported by substantial evidence and was not the product of legal error.

III. <u>Analysis</u>

    A. <u>The ALJ's Evaluation of Medical Opinions</u>

On appeal, Henderson initially objects to the weight given by the ALJ to the opinions of certain treating and examining physicians. (Dkt. # 8-1 at 14-16). These include assessments by Henderson's treating orthopedic surgeon, Dr. Joseph Kowalski, consulting nuclear medicine specialist Dr. Hongbiao Liu, and a second treating physician retained by Henderson after she filed her Social Security benefits applications, Dr. James Hohensee.

Applying the treating physician rule, the ALJ opted to afford "great" weight to Dr. Kowalski's opinion, in light of his long treatment history with Henderson, his certification in orthopedic medicine, and the consistency of his opinion with other evidence of record. (Tr. 20). The ALJ likewise gave "great" weight to the opinion of Dr. Liu, noting its consistency with Dr. Kowalski's opinion, and with the "claimant's wide range of reported activities of daily living." (*Id.*).

Henderson argues that the ALJ erred when he gave "great" weight to Dr. Kowalski's opinion, but declined to adopt the "no bending or stooping" limitation it contained, instead concluding that Henderson could engage in such postural activities on an "occasional" basis. (Dkt. # 8-1 at 15).

I do not find that the ALJ's assessments of the medical opinions of record were erroneous. First, it is well settled that "an ALJ is not required to accept or reject a medical opinion in its entirety." *Howe v. Colvin*, 2013 WL 4534940, *14 (S.D.N.Y. 2013). An ALJ may, upon a reasoned application of the treating physician rule, decline to assign controlling weight to some or all of a treating physician's opinion, so long as the ALJ's decision provides "good reasons" for doing so. *See, e.g.*, *Phillips v. Comm'r of Soc. Sec.*, 2018 WL 1768273, *4 (N.D.N.Y. 2018).

To the extent that the ALJ declined to incorporate a complete prohibition against bending or stooping into Henderson's RFC, the Court finds that the ALJ's determination was appropriate, and is supported by "good reasons." Initially, Dr. Kowalski's September 12, 2013, opinion is not rendered in the customary form, often a check-box template or a narrative explanation which purports to provide a wide-ranging assessment of a claimant's abilities and limitations in light of her diagnoses. Rather, Dr. Kowalski's assessment is a cursory "return to work" authorization, consisting solely of the words "No Bending/stooping Light duty" handwritten in the middle of a

5

treatment note concerning Henderson's follow-up care after her spinal decompression and fusion surgery. (Tr. 324, 398). Accordingly, Dr. Kowalski opined that Henderson could actually return to work as of September 12, 2013—albeit with bending and stooping limitations—despite Henderson's request that day that Dr. Kowalski provide a "note to remain out of work for social services." (Tr. 398). Dr. Kowalski's notation is not, and does not purport to be, an assessment of Henderson's permanent work-related limitations.

Moreover, Dr. Kowalski reiterated his belief that Henderson could return to work after Henderson retained a new physician, Dr. Hohensee, in June 2014. Progress notes from Dr. Hohensee's nurse practitioner, Carolyn DiFonzo, indicate that, as of June 10, 2014, her offices would not complete Henderson's "disability paperwork . . . after just establishing" a treating relationship with her. (Tr. 415). Henderson told Nurse DiFonzo that "her previous PCP did not feel she needed disability and that she was 'faking it.'" (*Id.*).[2] Nurse DiFonzo instructed Henderson to return to Dr. Kowalski "and ask for [a] consultation letter to inform us of his opinion of [Henderson's] limitations," which Henderson agreed to do. (Tr. 415).

On August 29, 2014, Nurse DiFonzo indicated that she had reviewed Dr. Kowalski's "response to [Henderson's] request for support on disability," which stated that he had recommended Henderson could return to work on September 12, 2013. (Tr. 423). Nurse DiFonzo noted that Henderson refused to return to work because, in Henderson's view, "she is disabled." (*Id.*). Based on this, it is obvious that Dr. Kowalski did not think Henderson's back impairments precluded her from returning to work.

In any event, Dr. Kowalski's dramatic restriction is inconsistent with substantial evidence of record discussed and relied-upon by the ALJ, including Dr. Liu's assessment, which showed a

---

[2] Although it is unclear exactly which doctor believed Henderson was "faking it," the ALJ noted that the progress note refers to Dr. Kowalski, and the context of that portion of the note reasonably supports that conclusion.

6

limited range of lumbar spine motion (70 degrees) and rotation (15 degrees), but full range of motion in Henderson's hips, knees, and ankles, full strength in all extremities, and stable joints, all of which Dr. Liu concluded indicated a "mild to moderate limitation for prolonged . . . bending." (Tr. 19, 329-30). Dr. Liu's findings are consistent with the objective evidence of record, including several X-rays of Henderson's spine, performed after her April 2, 2013, lumbar spine surgery, which reflected a stable L3-L5 posterior surgical fusion. (Tr. 395, 397, 399, 400, 403). Likewise, a strict "no bending/stooping" limitation is inconsistent with Henderson's self-reported activities of daily living, including self-care activities, shopping, cooking, cleaning, and shopping, and with Henderson's report that she had stopped working due to a business-related layoff, rather than because of any disabling impairment. (Tr. 19-20). Simply put, the ALJ's determination that Henderson can bend and stoop "occasionally" is supported by substantial evidence, and was not the product of legal error.

In short, while "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision," he was "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order). Furthermore, it is "not require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983).

Here, the ALJ discussed the medical opinion evidence, set forth his reasoning for the weight afforded to each opinion, engaged in a detailed application of the treating physician rule, and cited and discussed specific evidence in the record which supported his determination. As such, I do not find that the ALJ improperly declined to grant controlling weight to Dr. Kowalski's

7

opinion or substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). The Court concludes that a longitudinal review of the evidence of record supports the ALJ's RFC determination, and finds no reason to disturb it.

### B. <u>New and Material Evidence</u>

Henderson next argues that medical evidence submitted with her motion post-dating the ALJ's and Appeals Council's decisions warrants remand. (Dkt. # 8-1 at 17-20). Specifically, Henderson submitted: (1) an operative report dated September 21, 2016, showing a total left knee arthroplasty replacement surgery performed by Dr. Nicholas Violante; (2) an October 6, 2016, post-operation follow-up treatment note from physician assistant Ryan Skibitsky; and (3) a December 5, 2016, consultative examination report created by family medicine practitioner, Dr. David Brauer. (Dkt. # 8-2 at 1-13). Henderson contends that this new evidence "reflects favorably on the severity of [her] bilateral knee condition and bolsters her credibility regarding the intensity of the [knee] pain." (Dkt. # 8-1 at 20).

The Social Security Act provides that a court may remand a case to the Commissioner to consider additional evidence where a plaintiff demonstrates that newly-submitted evidence "is material and that there [wa]s good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). To satisfy this burden, a plaintiff has to show that (1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the proffered evidence is material, meaning that it is (a) relevant to his or her condition during the time period for which benefits were denied; (b) probative; and (c) reasonably likely to have influenced the Commissioner to decide her application differently; and (3) good cause exists for his or her failure to present the evidence earlier. *See Mulrain v. Comm'r of Soc. Sec.*, 431 Fed.

8

Appx. 38, 39 (2d Cir. 2011) (summary order) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)).

The Second Circuit has held that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." *Pulos v. Comm'r of Soc. Sec.*, 2018 WL 5801551, *6 (W.D.N.Y. 2018) (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). For example, "subsequent evidence of the severity of a claimant's condition may demonstrate that during the relevant time period, the claimant's condition was far more serious than previously thought." *Id.* (alterations and quotations omitted).

However, "[w]hile documents generated after the ALJ's decision may bear upon the severity and continuity of impairments existing during the relevant period, if the new evidence concerns only the claimant's condition after the relevant time period, a remand for consideration of this evidence is not appropriate." *Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) (citations and quotations omitted); *see also Collato v. Colvin*, 2016 WL 3351581, *4 (W.D.N.Y. 2016) (finding that new evidence was not material and did not relate to the relevant time period; "[the new evidence] does not provide a probative or retrospective opinion of plaintiff's health before the ALJ rendered his decision; it does not diagnose or corroborate an ailment that existed before the ALJ rendered his decision; and it does not contain reports stating that an impairment the ALJ rejected as speculative had existed before the ALJ rendered his decision"); *O'Connell v. Astrue*, 2013 WL 1337282, *4 (W.D.N.Y. 2013) ("new evidence is not material if it tends to establish only 'a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition'") (quoting *Cassera v. Sec'y of Health & Human Servs.*, 104 F.3d 255 (2d Cir. 1996)), *aff'd* 558 Fed. Appx. 63 (2d Cir. 2014) (summary order).

The Commissioner does not contest that the above-listed evidence is new and that good cause existed for the failure to provide it earlier. (Dkt. # 11 at 10). However, the Commissioner argues that "the evidence is not material to the time-period covered by the Commissioner's final decision." (*Id.*). The Court agrees. The newly submitted evidence, detailing Henderson's left knee surgery and referencing her right knee surgery, does not suggest that her symptoms were worse during the period under consideration than the ALJ contemplated. Rather, particularly with regard to her left knee condition, "the new evidence suggests at most that h[er] condition worsened after the ALJ's decision," which is not a basis to remand. *Collins*, 960 F. Supp. 2d at 501.

For instance, as Henderson points out, her left knee surgery became necessary in September 2016 only because "the arthritis in the left knee had *progress[ed] far enough* (since the first surgery in 1992) that it needed total knee replacement surgery." (Dkt. # 8-1 at 20) (emphasis supplied). There is no evidence that this surgery was necessary prior to the ALJ's decision. In fact, the record reflects that in 2014, Dr. Donald Nenno observed that Henderson had, among other things, "well maintained" range of motion in both of her knees, "good alignment of her lower extremities," and only "moderate arthritis" in her left knee. (Tr. 411-12). Thus, based on these circumstances, the fact that her left knee ultimately required surgery, by itself, does not suggest that the knee was in a worst condition during the relevant time period. Instead, "the new evidence concerns only [Henderson's] condition after the relevant time period." *Collins*, 960 F. Supp. 2d at 501.

In addition, regarding Henderson's right knee injury, the new evidence does not provide a "probative or retrospective opinion" of her condition before the ALJ rendered his decision, it does not "diagnose or corroborate an ailment that existed before the ALJ rendered his decision," and it does not "contain reports stating that an impairment the ALJ rejected as speculative had existed before the ALJ rendered his decision." *Collato*, 2016 WL 3351581 at *4. It is clear that the ALJ

10

did not reject Henderson's claims of knee pain, and, in fact, knew that Henderson had a torn ACL at the time of his decision. (Tr. 18). The ALJ found that Henderson's chronic knee pain constituted a severe impairment, (Tr. 15), and accounted for that condition in the RFC by limiting Henderson to only "occasional" stooping, kneeling, crouching, and climbing of stairs, (Tr. 17).

Henderson has not shown that the evidence of her right knee surgery would have likely influenced the ALJ's decision regarding her applications. She has not shown that the February 2016 right knee surgery sheds greater light on her condition during the relevant time period than the records the ALJ already had at his disposal. *See Collins*, 960 F. Supp. 2d at 501 ("Because there is no reason to believe the new evidence casts light on [plaintiff's] condition during the period under review, remand to consider this evidence is inappropriate."). In addition, Henderson has not demonstrated that Dr. Brauer's medical source statement, opining that Henderson was "marked[ly]" limited in her ability to perform "activities that require *full or repetitive* bending, squatting, or kneeling," (Dkt. # 8-2 at 13) (emphasis supplied), is inconsistent with the ALJ's RFC determination, which limited Henderson to only *occasional* performance of those motions. Therefore, the new evidence is not material.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. Henderson's motion for judgment on the pleadings (Dkt. #8) is **DENIED**, the Commissioner's cross motion for judgment on the pleadings (Dkt. #11) is **GRANTED**, and the Commissioner's decision that Henderson is not disabled is affirmed in its entirety. Henderson's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 19, 2018.